UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rosendo Diaz, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Viking Client Services, Inc. d/b/a Viking Billing Service,<br><br>Defendant. | Case No. 16-cv-336 (SRN/KMM)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Anna P. Prakash, Brock J. Specht, and Kai H. Richter, Nichols Kaster, PLLP, 80 South 8th St., Ste. 4600, Minneapolis, MN 55402; Carl E. Christensen, Christensen Law Office, PLLC, 800 Washington Ave. N., Ste. 704, Minneapolis, MN 55401 for Plaintiff.

Christopher R. Morris and Michael A. Klutho, Bassford Remele, PA, 33 South 6th St., Ste. 3800, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Viking Client Services, Inc. d/b/a Viking Billing Service's ("Viking") Motion to Dismiss [Doc. No. 14]. For the reasons set forth below, the Motion is granted.

I.     **BACKGROUND**

On November 20, 2015 Plaintiff Rosendo Diaz ("Diaz") rented a car from Avis Budget Group, Inc. ("Avis"). (Am. Compl. at ¶¶ 6–7, 12 [Doc. No. 11].)  The rental agreement Diaz signed required him to return the car "in the same condition [he] received it in . . . ." (Id., Ex. 3 ("Rental Agreement") at ¶ 3 [Doc. No. 11-3].) Diaz was responsible "for all loss of or damage to the car regardless of cause, or who, or what caused it." (Rental

Agreement at ¶ 8.)  Diaz agreed to pay any "administrative fee" associated with damage to the car, a "violation of the agreement," or attempts to collect on past due amounts.  (Id. at ¶¶ 8, 15, 23.)  Important to the present matter, the agreement stated:

> If you do not pay all amounts due to us under this agreement *upon demand*, . . . including . . . for loss of or damage to the car . . . you agree to pay a *late charge* of 1 1/2% per month *on the past due balance* or the highest rate permitted by applicable law . . . .

(Id. at ¶ 23 (emphasis added).)

Diaz returned the car on November 23, 2015 and claims that it was "free of any damage or defect."  (Am. Compl. at ¶ 13.)  However, according to Diaz, after he returned the vehicle "Avis charged him for damage he allegedly caused to the vehicle . . . ."  (Id.)

Avis uses Sedgwick Claims Management Services, Inc. ("Sedgwick") to collect debts related to damaged vehicles.  (Id. at ¶ 8.)  Diaz claims that Avis "regarded customers [who returned damaged vehicles] as being in default of their rental agreements at the time these debts were transferred to Sedgwick."  (Id.)  Sedgwick then engaged Viking to collect on Diaz's alleged debt.  (Id. at ¶ 9.)  Viking is a "consumer and commercial debt collection agency[,]" licensed to do business as such in Minnesota, and according to Diaz, treats customers who returned damaged vehicles "as being in default of their car rental agreements."  (Id. at ¶¶ 3, 5, 9.)

On December 29, 2015, Diaz received a letter from Viking stating that Diaz owed $721.27 for damage to the vehicle he rented in November.  (Id. at ¶¶ 14, 16.)  In relevant part, that letter stated: "[Viking] provides claims administration services for [Avis]. … The vehicle you rented from [Avis] was damaged on 12/08/15 while in your possession.  Per

2

your rental contract, you are responsible for the costs associated with the damage regardless of fault." (Id., Ex. 2 ("December 29 Letter") [Doc. No. 11-2].) It went on to state that the damages amounted to $607.72, the loss of use charge was $13.55, and also assessed a $100 "administrative fee." (December 29 Letter.) The letter provided Diaz with information about how to pay the amount he allegedly owed and how to contact Viking with any questions. (Id.) The words "debt" and "default" were not used in the letter and Viking did not identify itself as a debt collector. (See id.) Importantly here, there is no evidence, nor even any allegation, that at any time before this letter was sent to Diaz, Avis, Sedgwick, or Viking made any demand that he pay for the alleged damage.

After receiving Viking's letter, Diaz called Avis, and Avis "acknowledged . . . that Viking was engaged to collect Avis' debts," but recommended that Diaz contact Viking directly. (Am. Compl. at ¶ 23.) Diaz contacted Viking and disputed the claim because he was not in possession of the vehicle on December 8, 2015 when it was allegedly damaged. (Id. at ¶¶ 21, 24.) After being placed on hold, a Viking representative "finally admitt[ed] a mistake and cast blame on Avis." (Id.) Still, Diaz demanded that Viking provide "all information related to the alleged debt, . . . in order to verify the validity of the alleged debt." (Id. at ¶ 25.) Viking instructed Diaz to contact Sedgwick for this information. (Id. at ¶ 26.) However, when Diaz did so, he was directed to a "supervisor" who was actually affiliated with Avis. (Id. at ¶¶ 27–28.) Avis, Sedgwick, and Viking never responded to Diaz's demand. (Id. at ¶ 29.)

Based on the allegations above, Diaz brought claims against Viking under the Fair Debt Collection Practices Act ("FDCPA") asserting that the December 29 Letter was "false,

3

deceptive, misleading, unfair, and unconscionable," and did not contain the required "mini-Miranda warning." (Id. at ¶¶ 30–31.) Diaz believes Viking sent substantially similar letters to others under similar circumstances. (Id. at ¶ 33.) Viking moved to dismiss, arguing that Diaz failed to state a claim because Viking is not a "debt collector" and Diaz's debt was not "in default." (See Mot. to Dismiss; Def.'s Mem. in Supp. at 1–2.)

## II. DISCUSSION

### A. Standard of Review

When evaluating a motion to dismiss, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). To satisfy Federal Rule of Civil Procedure 8's pleading standard, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In sum, Rule 8 requires that a complaint have "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

### B. "Debt Collectors" Under the FDCPA

The parties' arguments center on whether Viking is a "debt collector" subject to the FDCPA. That question in turn requires assessing whether the debt at issue was "in default" or treated as if it were.

The FDCPA regulates the activities of "debt collectors," not "creditors." See Schmitt v. FMA All., 398 F.3d 995, 998 (8th Cir. 2005). Therefore, in order to bring a claim under the FDCPA, the plaintiff must plead facts sufficient to establish that the defendant is a "debt collector" within the meaning of the statute. Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1008–09 (D. Minn. 2008); see Lansing v. Wells Fargo Bank, No. 11-cv-3132 (DSD/AJB), 2011 WL 6754083, at *1–2 (D. Minn. Dec. 23, 2011) (dismissing the plaintiff's claim for not pleading any facts regarding the default date of the mortgage; therefore, the defendant was not a "debt collector" under the FDCPA). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, explicitly excluded from the definition of "debt collector" is "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt *which was not in default at the time it was obtained* by such person." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added).

Whether an entity is subject to the FDCPA as a debt collector depends on the default status of the debt at the time it was obtained. See Alibrandi v. Fin. Outsourcing Servs., 333 F.3d 82, 86 (2d Cir. 2003); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th

Cir. 2003) (The FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not."); McClenahan v. Equifax Info. Servs. LLC, No. 14-cv-507 (DWF/FLN), 2016 WL 554819, at *3 (D. Minn. Feb. 11, 2016) ("[A] person who obtained the debt at issue when the debt was not in default cannot be liable as a debt collector under the FDCPA."). Additionally, a defendant is not a debt collector if the defendant is servicing, rather than collecting, the plaintiff's debt. See Motley, 557 F. Supp. 2d at 1009; see also Schlosser, 323 F.3d at 538 ("For those who acquire debts originated by others, the distinction drawn by the statute—whether the loan was in default at the time of the assignment—makes sense as an indication of whether the activity directed at the consumer will be servicing or collection."). A "nonoriginating debt holder," like Viking, is considered a debt collector under the FDCPA if it: (1) acquires debt that is "in default," or (2) treats the acquired debt as if it were "in default" at the time of acquisition. See Bridge v. Ocwen Fed. Bank, 681 F.3d 355, 362 (6th Cir. 2012).

   1. **Debt acquired in default**

Viking argues that the debt at issue was not in default and that the December 29 Letter was an initial demand for payment. (Def.'s Mem. in Supp. at 1 [Doc. No. 16]; Def.'s Reply at 1 [Doc. No. 19].) Diaz disagrees and argues, in relevant part, that under the terms of the Rental Agreement, he was in default from the moment he returned the allegedly damaged car. (Pl.'s Mem. in Opp. at 10–11 [Doc. No. 18].)

The FDCPA does not specifically address when a debt is in default, or acquired as such, but case law provides some guidance. Generally, a debt does not go into default at

6

its inception or immediately after payment first becomes due. See Alibrandi, 333 F.3d at 86–87; Redden v. Capital One Servs., L.L.C., No. 15-cv-1640 (JRT/JSM), 2016 WL 386036, at *3 (D. Minn. Feb. 1, 2016). In Alibrandi, the Second Circuit held that default does not occur immediately, but rather at some point after the debt is outstanding or delinquent. 333 F.3d at 87. The court reasoned that it would not serve the FDCPA's broad, pro-debtor purpose if a debt went into default immediately after payment becomes due because of the adverse consequences that default imposes on debtors—such as acceleration, repossession, increased interest rates, and negative credit reports. Id. Therefore, there must be some period of time after a debt becomes due and is outstanding before it is "in default." Id. at 86–87.

Likewise, the court in Redden held that it would be implausible for a debt to be "in default" at the moment of inception. 2016 WL 386036, at *3. Redden involved an FDCPA claim against a nonoriginating debt holder, Capital One Services, based on letters Capital One Services sent the plaintiff related to past due amounts on an account she held with a bank affiliated with Capital One Services. Id. at *1–3. The court granted the Capital One Services' motion to dismiss, finding it was not a debt collector under the FDCPA because it obtained the plaintiff's debt and began servicing it when her account was opened. Id. at *3. Therefore, the plaintiff's account was not in default at its inception because the only plausible inference was that the plaintiff defaulted sometime after she opened her account, and necessarily, after Capital One Services acquired her debt. Id.

Here, Diaz conflates the act of incurring a debt (i.e., violating the Rental

7

Agreement) with a debt being in default. Returning a damaged vehicle might violate the Rental Agreement and create an obligation to pay (i.e., a debt), but that is a distinct consideration from whether that debt is in default. This distinction is clear in the terms of the Rental Agreement. Before imposing any "penalty" for nonpayment (i.e., treating the debt as in default), Viking had to first notify Diaz of the claim. (Rental Agreement at ¶ 23.) There is no evidence, or even an allegation, that Avis, Sedgwick, or Viking ever notified Diaz of the claim before the December 29 Letter. Under these circumstances, Diaz could not simultaneously incur the alleged debt and have that debt be in default.

Requiring that there be time between incurring a debt and that debt being considered in default comports with the reasoning in Alibrandi and Redden, and makes logical sense here. Diaz denies he returned the car in a damaged state. Until Viking informed him of its position otherwise, it was impossible for Diaz to know the fact of or amount of his alleged debt. Moreover, adopting Diaz's position would subject him, and others similarly situated, to severe negative consequences (e.g., late charges, interest, and negative credit reporting) before he was even aware of his alleged debt. The FDCPA, which was meant to protect debtors from aggressive collection practices, cannot allow for such an unfair and illogical result. Thus, the Court holds that Viking did not acquire Diaz's alleged debt in default.

### 2. Debt treated as in default

Viking argues that it never treated Diaz's debt as if it were in default. (Def.'s Mem. in Supp. at 6–7; Def.'s Reply at 3–5.) Diaz disagrees and highlights three facts he believes support the contention that Viking treated the debt as in default: (1) the fact that Viking is

8

licensed to do business as a debt collector; (2) his allegation that Avis considered the debt in default, evidenced by its transfer of the debt to Sedgwick and then Viking; and (3) the fact that Viking assessed a $100 administrative fee in the December 29 Letter. (See Pl.'s Mem. in Opp. at 3–5, 8–9.)

An entity is a debt collector under the FDCPA if it treats the debt it acquired as if it were in default.[1] See Bridge, 681 F.3d at 362. "It matters not whether such treatment was due to a clerical mistake, other error, or intention." Id. The reason for this broad interpretation of "debt collector" is to prevent defendants from retroactively stating that a debt was not "in default" and avoid FDCPA liability "despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error." Id. at 362–63. Factors to consider when deciding whether a debt was treated as in default include:

> the number of times a creditor has requested payment, the time that has elapsed since the first request, the urgency of the language used in those requests, the debtor's knowledge that she has been referred to a third party, the creditor's internal policies, any representations made by or on behalf of the creditor . . . about how it collects debts, and apparent attempts by the creditor or third party to circumvent the FDCPA's consumer protections.

Mavris v. RSI Enters., Inc., 86 F. Supp. 3d 1079, 1086 (D. Ariz. 2015).

The fact that Viking is a licensed debt collector is not dispositive of whether, in this instance, it acted in that capacity. The December 29 Letter explicitly stated that Viking's role was that of a claims administrator. In that capacity, Viking informed Diaz

---

[1] These inquiries—whether a debt is in default or if it is treated as such—are closely related and often overlap.

of the claim that he returned the vehicle damaged and the amount he was obligated to pay as a result.

Similarly, the fact that Avis transferred its claim against Diaz to Sedgwick, which in turn transferred the claim to Viking, does not mean that Diaz's debt was treated as in default.  Diaz alleges that: (1) "Avis regarded these customers as being *in default of their car rental agreements* at the time these debts were transferred[,]" and (2) "Viking treated such customers as being *in default of their rental agreements*."  (Am. Compl. at ¶¶ 8–9 (emphasis added).)  There are at least two problems with these allegations.

First, Diaz's use of the term "in default"—an element of an FDCPA claim—coupled with his conclusory allegations about the significance of the transfers among Avis, Sedgwick, and Viking, does not satisfy Rule 8's pleading standard.  See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  This is especially true since the Rental Agreement contemplates Avis' use of third-party claims administrators.  (See Rental Agreement at ¶ 23.)  Claims administration is distinct from attempts to collect on a defaulted debt, at least under these circumstances.  Second, Diaz again conflates violating the Rental Agreement with treating the debt that ensues from that violation as being in default.  It makes no difference to Diaz's FDCPA claim whether Avis, Sedgwick, or Viking considered Diaz to be in violation of the Rental Agreement, only whether they treated the debt that resulted from Diaz's alleged violation as if it were in default.

Lastly, the fact that Viking charged a $100 "administrative fee" is not evidence that it treated Diaz's alleged debt as in default.  Under the Rental Agreement, the penalty

for not paying a debt after receiving a demand is a "late charge" consisting of a monthly percentage of the "past due balance[.]" (Id.) This late charge is distinct from the "administrative fees" associated with damaging a vehicle (i.e., violating the Rental Agreement). (See id. at ¶¶ 8, 15.) Had Viking assessed a late charge against Diaz, this would be strong evidence that it considered the debt to be in default. But that is not what happened. Instead, Viking charged an administrative fee associated with the claims administration process, as contemplated by the Rental Agreement. That fee is not evidence that Viking considered Diaz's debt to be in default.

In short, even taking Diaz's allegations in the most favorable light to him, he has not plausibly alleged that Viking treated his debt as if it were in default. Viking sent a single letter to Diaz, approximately one month after he returned the vehicle. That letter, for the first time, notified Diaz of Viking's claim that he damaged the vehicle and owed approximately $700. The letter did not contain the words "debt" or "default," nor did it employ any of the aggressive, urgent language typically found in dunning letters. Viking did not identify itself as a "debt collector," but instead made clear that it was providing claims administration services for Avis. Before the December 29 Letter, Diaz received no communications whatsoever from Avis, Sedgwick, or Viking about the claim. Nor did he receive any further communications about the claim after he disputed it. This single communication, coupled with Diaz's conclusory allegations, does not satisfy Rule 8's requirement that Diaz plead "enough facts to state a [FDCPA] claim . . . that is plausible on its face." See Twombly, 550 U.S. at 570.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendant Viking Client Services, Inc. d/b/a Viking Billing Service's Motion to Dismiss [Doc. No. 14] is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  October 3, 2016                                        s/ Susan Richard Nelson
                                                                              SUSAN RICHARD NELSON
                                                                              United States District Judge